UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PERCY LEVY,

    Plaintiff,

  v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, *et al*,

    Defendants.

Case No. C08-5694RJB-KLS

REPORT AND
RECOMMENDATION

Noted for April 10, 2009

  This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4. This matter comes before the Court on the filing by defendants Catherine Baum and William Lane of a motion to dismiss for failure to exhaust his administrative remedies pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b). (Dkt. #3). Having reviewed defendants' motion, plaintiff's response to that motion, defendants' reply thereto, and the remaining record, the undersigned submits the following report and recommendation for the Court's review.

## FACTUAL AND PROCEDURAL BACKGROUND

  On September 19, 2008, plaintiff filed a civil action in Thurston County Superior Court, in which he brought various state and federal claims against defendants Baum and Lane – as well as against two other defendants, Pat Glebe and the Washington State Department of Corrections ("DOC") – which

1 included claims of medical malpractice, negligence, violations of plaintif's due process, equal protection and Eighth Amendment rights, and a violation of the Americans with Disabilities Act ("ADA"). (Dkt. #1, Exhibit 1, Attachment A). On November 19, 2008, defendants Baum and Lane filed a notice of removal of that complaint in this Court. (Dkt. #1). On November 26, 2008, those defendants filed their motion to dismiss plaintiff's complaint. (Dkt. #3).

In their motion to dismiss, defendants Baum and Lane argue the complaint should be dismissed on the basis that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). Those defendants further argue that because plaintiff did not pay his state court filing fee – and because the Thurston County Superior Court denied him *in forma pauperis* status and refused to consider his state tort claims absent payment of the filing fee – those claims were not pending in state court at the time the complaint was removed to this Court, and thus were not subject to removal. In addition, defendants assert that since neither the DOC nor defendant Glebe have been personally served by plaintiff, they are not parties to this action. In his response to the motion to dismiss, plaintiff argues that he exhausted his administrative remedies to the extent the law requires of him, and that his state tort claims should be rejoined with his federal claims. (Dkt. #6).

## DISCUSSION

I. <u>Removal: Status of Plaintiff's Complaint and the Unserved Defendants</u>

As noted above, defendants Baum and Lane argue that because plaintiff was not granted *in forma pauperis* status by the state court and did not pay the state court filing fee, the state claims contained in his complaint were not subject to removal. The undersigned disagrees. The federal general removal statute, 28 U.S.C. § 1441(a), provides in relevant part that:

> . . . Except as otherwise expressly provided by Act of Congress, any civil <u>action</u> brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

(emphasis added). Thus, when a state court action is removed to federal court, the entire action – not just some of the individual claims contained therein – is subject to removal. See <u>Dillon v. State of Mississippi Military Department</u>, 23 F.3d 915, 918 (5th Cir. 1994) ("[R]emoval under the general removal statute, 28 U.S.C. § 1441, and other similar statutes, removes the <u>action</u>.") (emphasis added); <u>see also</u> <u>Arango v.</u>

Guzman Travel Advisors Corp., 621 F.2d 1371, 1376 (5th Cir. 1980) (removability is determined as to civil action's entirety, not as to particular claims or parties)[1]; Nolan v. Boeing Co., 919 F.2d 1058, 1065 & n.9 (5th Cir. 1990) (entire action is removed, not merely specific claims asserted therein).

The undersigned also finds without merit the argument made by defendants Baum and Lane that neither defendant Glebe nor the DOC are parties to this action. In the Ninth Circuit, parties who have not been served need not join in the removal action in order for a complaint to be removed from state court to federal court.[2] Salveson v. Wester States Bankcard Association, 731 F.2d 1423, 1429 (9th Cir. 1984); see also Gossmeyer v. McDonald, 128 F.3d 481, 489 (7th Cir. 1997) (requirement that all defendants join in removal motion not necessary where non-joining party not yet served). Nor, as noted above, may removal be requested for only some of the named defendants. See Arango, 621 F.2d at 1376. The undersigned thus finds that removal here is effective as to defendants Glebe and the DOC as well.

## II.   Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law by a prisoner "until such administrative remedies as are available

---

[1] In the context of removal made by a "foreign state" defendant in a multi-party lawsuit, the Fifth Circuit in Arango stated that while "[t]he language of s 1441(d) [addressing removal of civil actions brought by foreign states] does not expressly address its operation in multi-party lawsuits," the Court of Appeals was "convinced that the better interpretation of s 1441(d) is that when a 'foreign state' defendant in a multi-party suit removes under that provision, the entire action against all defendants accompanies it to federal court," based on "a rather clear congressional intent" in regard thereto. Id. at 1375 ("[T]he strong inference . . . is that Congress understood that a petition [for removal] under s 1441(d) would effect the removal of the entirety of an action against multiple defendants."). The Fifth Circuit went on to state that:

> The language of the section, though it does not compel this interpretation, certainly accommodates it nicely. Section 1441(d) provides for the removal of "civil actions," not simply claims, involving "foreign state" defendants. The same phrase in the remaining subsections of s 1441 denotes the entirety of the proceedings in question, not merely those aspects involving discrete federal claims or parties. Section 1441(b), for example, provides that no "civil action," other than those based on federal questions, may be removed where there are multiple defendants and any one of them is a citizen of the forum state; the "civil action's" removability is determined as to its entirety, not as to particular claims or parties. *See also* Naylor v. Case & McGrath, Inc., 585 F.2d 557, 560-61 (2d Cir. 1978), and 14 C. Wright, A. Miller & E. Cooper, supra s 3722 at 573 (pendent jurisdiction allows removal of entire case, federal and non-federal claims, under s 1441(a)).

Id. at 1376 (internal footnote omitted). The undersigned finds the Fifth Circuit's reasoning here to be persuasive, and thus hereby adopts it.

[2] Indeed, 28 U.S.C. § 1448 expressly provides that any defects in service made prior to removal may be cured after removal is completed: "In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."

are exhausted." 42 U.S.C. § 1997e. Since passage of this section of the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006) (finding that prisoners now must exhaust all available remedies); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory."). "Even when the prisoner seeks relief not available in grievance proceedings," furthermore, "exhaustion is a prerequisite" to filing a civil rights action in federal court. Porter, 534 U.S. at 524.

Failure to exhaustion such administrative remedies, therefore, requires dismissal of the underlying complaint without prejudice under 42 U.S.C. § 1997e(a). McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); Wyatt, 315 F.3d at 1120 (if district court concludes that prisoner has not exhausted nonjudicial remedies, proper remedy is dismissal of claim without prejudice); see also Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) (suit filed by prisoner before administrative remedies have been exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if prisoner exhausts intra-prison remedies before judgment).

In deciding whether to grant a motion to dismiss for a failure to exhaust administrative remedies, furthermore, the Court "may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20; see also Ritza, 837 F.2d at 369 (district court has broad discretion as to method to be used in resolving factual disputes arising in connection with jurisdictional or related types of motions, such as matters in abatement; no presumptive truthfulness attaches to plaintiff's allegations, and existence of disputed material facts will not preclude district court from evaluating for itself claims' merits). If the Court does look beyond the pleadings "to a factual record in deciding the motion to dismiss for failure to exhaust," however, it "must assure" that plaintiff "has fair notice of his opportunity to develop a record." Wyatt, 315 F.3d at 1120 n. 14. The undersigned finds that plaintiff has had such notice.[3]

In his complaint, plaintiff claims that in early May 2008 – shortly after being transferred to the Stafford Creek Corrections Center ("SCCC") – he was given a health status report ("HSR") by defendant Baum. He claims that HSR restricted him from engaging in certain types of physical activities far beyond previous limitations imposed on him, which were that he should not be on a top bunk and that he should

---

[3]As evidence of this, the Court notes that plaintiff has not voiced any objection or concern in his response that he was not provided with a fair opportunity to develop the record here. Indeed, as discussed in further detail below, plaintiff concedes that he exhausted the grievances procedures available to him only to the level stated by defendants. (Dkt. #6, p. 2).

REPORT AND RECOMMENDATION
Page - 4

be limited on stairs. Plaintiff alleges defendant Baum imposed the more restrictive limitations in order to punish him, which caused him to gain weight and feel extremely sick. Plaintiff claims that in August, 2008, defendant Baum removed the restrictions without examining him. He further claims that defendant Lane took extreme measures to discourage inmates, particularly black inmates, from seeking an HSR, and that he feared retaliation from defendant Lane. Lastly, plaintiff alleges defendant Lane used his position to violate the equal protection rights of black inmates, and alleges all of the named defendants violated his due process and Eighth Amendment rights, as well as the ADA.

In support of their motion, defendants present the declaration of Devon Schrum, who has been the DOC Grievance Program Manager since April 2006. (Dkt. #3-2, Exhibit 1, p. 1). Under the DOC's Offender Grievance Program ("OGP"), which has been in existence since the early 1980's, inmates may file grievances over a wide range of aspects of their imprisonment, including application of DOC policies, rules and procedures and staff actions, including retaliation for filing grievances. Id. at pp. 1-2. The OGP also provides a wide range of remedies, including administrative actions, agreement by DOC officials to remedy objectionable conditions within a reasonable period of time, and changes in a local or department policy or procedure. Id. at p. 2.

There are four levels of review under the OGP. At Level 0, the complaint or informal level:

> . . . The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.

Id. "Routine and emergency complaints accepted as formal grievances begin at Level I," where again the "local [prison] grievance coordinator is the respondent." Id. at pp. 2-3. Inmates then may appeal Level I grievances to Level II, where the prison superintendent is the respondent. Id. at p. 3. Staff conduct grievances are initiated at Level II as well. Id. at 2. All Level II responses, except those which concern emergency grievances, may be appealed to DOC headquarters. Id. at p. 3.

Ms. Schrum states that "[t]he DOC's grievance system is well known to inmates." Id. She further states in relevant part:

> I have reviewed DOC's official grievance records concerning Mr. Levy and have determined that he filed a grievance against SCCC staff relating to his HSR restrictions and improper punishment for requesting a lower bunk accommodation. This is the only grievance Mr. Levy has filed relating to the allegations in his complaint. This

> grievance was assigned log ID number 0811226. DOC staff responded to this grievance at levels I and II. Mr. Levy did not further appeal the grievance to the highest level, level III. . . .

Id. and Attachments B and C. Defendants argue plaintiff has failed to exhaust his administrative remedies here, because he never grieved the issue of racial discrimination, and failed to pursue to the highest level his grievance concerning the activity restrictions placed on him. Plaintiff argues in regard to the last point that while he only pursued his grievance to level II, he was granted all the remedies which were available to him, and therefore did not need to pursue the DOC grievance process any further. In addition, plaintiff asserts that because the issue of racial discrimination is directly related and ancillary to that regarding the activity restrictions, he did not have to specifically grieve it.

Courts have recognized that "inmates need not exhaust administrative remedies when doing so would be entirely futile," and that "under some circumstances, exhaustion should not be required when no remedy at all is available." Gomez v. Winslow, 177 F.Supp.2d 977, 984 (N.D.Cal. 2001) (citing cases). The Gomez court quoted with apparent approval another district court's comment that "[i]t would be a strange rule that an inmate who has received all he expects or reasonably can expect must nevertheless continue to appeal [his grievance to the highest possible level within the prison administrative grievance process], even when there is nothing to appeal." Id. (quoting Nitz v. Correctional Officer French, 2001 WL 747445 *3 (N.D.Ill. 2001).

At first glance, the facts in this case appear to be substantially similar to those in Gomez, where the plaintiff had initiated the available prison administrative grievance and appeal process over concerns about his medical treatment:

> In the instant case, plaintiff filed his administrative appeal after learning of his . . . diagnosis because he was concerned about the treatment, or lack thereof, he was receiving for the illness. Throughout the administrative appeal process, his goal was to receive effective treatment for his illness. During the period between the informal review level and the formal review level, Gomez was offered treatment . . . , something he had been seeking for some time. He filed a formal level appeal, though, because he was dissatisfied with the responses he had received from medical staff about his concerns about potential side effects. While the formal level review was pending, and after numerous requests by Gomez, . . . medical staff assured him that he need not worry about side effects caused by . . . treatment. In fact, Gomez apparently told prison officials that his concerns had been addressed. In the Second Level Response Record, Dr. Winslow wrote: "During your interview, you indicated most of your concerns have been addressed and you were now waiting for x-rays to be taken, before you could begin your . . . treatments." . . . The appeal was granted, and treatment began soon thereafter. Because Gomez's questions related to his concern about possible side effects of . . . treatment and he had been unwilling to sign consent forms for the treatment until

those questions were answered, the fact that . . . treatment was commenced is another
indication that his concerns had been addressed.

Id. The district court went on to reject the defendants' argument that the plaintiff should have continued with the administrative appeal process, explaining:

It is unclear what relief defendants believe would have been available to Gomez had he
continued to a higher level of appeal. His administrative appeal had been granted, and
because he was finally being treated and his questions had been answered, there was no
reason for him to press his appeal to a higher level. Were it possible to obtain money
damages through the administrative appeal process, there would likely be an argument
that there was an available remedy that required exhaustion, but there is no evidence
that any further remedy was available. Because Gomez had, in essence, "won" his
inmate appeal, it would be unreasonable to expect him to appeal that victory before he
is allowed to file suit. Indeed, it appears that plaintiff would have been rebuffed by
prison officials had he for some reason tried to pursue his grievance to another level.
At oral argument on this motion, counsel for plaintiff noted that one of the grounds for
rejecting or canceling an appeal is that the issue had been resolved at a previous level.

Id. at 985 (finding that plaintiff had adequately exhausted his claim of inadequate medical treatment under PLRA exhaustion requirement).

In Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), the Tenth Circuit noted that the United States Supreme Court has held "the PLRA requires a prisoner . . . to complete administrative processes that offer some sort of relief, albeit not the . . . relief the prisoner wants." 365 F.3d at 1187 (citing Booth v. Churner, 532 U.S. 731, 734 (2001)). However, as the Gomez court did, the Tenth Circuit held that "prisoners need not engage in entirely fruitless exercises when no form of relief is available at all." Id. (noting that inmates must exhaust administrative remedies under PLRA only so long as there is possibility of at least some kind of relief). Accordingly, "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." Id. A prisoner, therefore, is "not required to file additional complaints or appeal favorable decisions in such cases," and "[w]hen there is no possibility of any further relief," that "prisoner's duty to exhaust available administrative remedies is complete. Id.

The plaintiff in Ross had complained about the safety of the shower floor at the facility where he was incarcerated, after having fallen once allegedly due to the smoothness of the floor and the lack of slip-resistant mats. Id. at 1182. As related by the Tenth Circuit, he subsequently began the facility's grievance process by submitting a pre-grievance resolution form "complaining that the . . . shower was unreasonably dangerous because it lacked a shower mat." Id. at 1187. The facility "responded by

furnishing the shower with a mat, thus fully alleviating the problem" the plaintiff raised. Id. It therefore appeared that facility officials were "unable to do anything more in response to" his complaint. Id. The Tenth Circuit pointed out in particular that "nothing in the record" indicated "money damages or any other retrospective relief was available" through the facility's grievance process. Id. As such, the Tenth Circuit held that "[h]aving received all the relief the grievance process could offer," the plaintiff did not then have to do any more to exhaust his administrative remedies in regard to his claims. Id.

Other courts agree with Gomez and Ross that "inmates need not exhaust administrative remedies when doing so would be entirely futile," and that "[w]hen there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." Id.; 177 F.Supp.2d at 984; see, e.g., Clement v. California Dept. of Corrections, 220 F.Supp.2d 1098, 1106 (N.D.Cal. 2002) (prisoner not required to exhaust further administrative appeals when all relief prison administrative appeal system could provide has been received); Brady v. Attygala, 196 F.Supp.2d 1016, 1021 (C.D.Cal. 2002); Mcgrath v. Johnson, 67 F.Supp.2d 499, 510 (E.D.Penn. 1999) (exhaustion complete when grievance resolved in prisoner's favor and there is no basis for him to appeal).

In another case, Hazelton v. Alameda, 358 F.Supp.2d 926 (C.D.Cal. 2005), the district court did not disagree with the approach taken by the Gomez court, but distinguished the facts of that case from the situation it faced. Unlike in Gomez, the plaintiff in Hazelton had not "received all of the relief he had requested during the pendency of his administrative appeal." 358 F.Supp.2d at 933. Rather, in Hazelton, the "plaintiff's appeal "was only partially granted at the first level of formal [administrative] review." Id. at 934. Indeed, "[i]n his written requests for second-level review," the plaintiff "alleged that the first-level response to his appeal was inadequate and misguided, repeated his demands for additional relief, and said he would press his appeal until he obtained relief in court, if necessary." Id. Accordingly, because it was "possible that he might have obtained additional relief if he had pursued his appeal through" the highest "level of formal review, even if he was precluded from obtaining" the particular form of relief he sought, the plaintiff had failed to exhaust all of his available administrative remedies. Id. at 934-35.

The undersigned finds the facts of this case to be more analogous to the facts in Hazelton, than to those in Ross and Gomez. The one grievance plaintiff did file relating to this matter concerned, as noted

above, the activity restrictions placed on him.  Also as noted above, plaintiff argues that although he only appealed the grievance through level II, he was granted all of the available remedies he had requested, and thus he did not need to pursue the DOC's grievance process any further.  It is true, again as noted above, that plaintiff requested the activity restrictions defendant Baum originally placed on him be removed, and that she removed them in response to the filing of his initial grievance. (Dkt. #3-2, Exhibit 1, Attachment B, Appeal to Level II, Log I.D. Number 081126).  It appears, though, that after defendant Baum lifted those restrictions, plaintiff told her that he "wished to continue to pursue" his grievance, because he was "going to sue somebody." (Id., Grievance Investigation, Log I.D. Number 0811226).

As did the inmate in Hazelton, therefore, plaintiff in so stating in effect indicated that removal of the activity restrictions was an inadequate administrative remedy, and that because of that, he was going to pursue legal action in court if necessary, thereby indicating he desired further relief.  Indeed, as defendants point out, additional administrative remedies were available to plaintiff, which could have been obtained by requesting that disciplinary action be taken with respect to defendant Baum's alleged misconduct.  As noted above, the DOC's grievance program allows grievances to be filed concerning the actions of staff, for which administrative measures could be sought.  As defendants also point out, in his grievance and subsequent appeal thereof to level II, plaintiff alleged the activity restrictions defendant Baum imposed on him were not only arbitrary and capricious, but punitive as well. (Id., Offender Complaint 0811226; Level I – Initial Grievance, Log I.D. Number 0811226).  Certainly, this indicates plaintiff believed the actions of defendant Baum were improper, and contrary to DOC policies and procedures.

Given plaintiff expressed his desire to pursue the grievance beyond Level II, and the availability of administrative remedies for staff misconduct of the kind he has alleged, the undersigned finds there likely was more he could have obtained in the way of relief prior to filing suit in this Court.  The undersigned further finds plaintiff failed to exhaust all available administrative remedies concerning his retaliation and racial discrimination claims as well.  First, plaintiff makes no reference in his grievance to issues of racial discrimination or retaliation.  Plaintiff argues those claims relate directly to the restrictions placed on him, and points to the claims of conspiracy contained in his complaint.  But the point is plaintiff never made known these claims to prison officials via the DOC's grievance program, or it seems,

1 otherwise. As such, those officials were deprived of the opportunity to address them prior to plaintiff
2 seeking redress in federal court, a key policy behind the exhaustion requirement. See Porter, 534 U.S. at
3 524-25. The same is true with respect to plaintiff's federal due process and ADA claims, as plaintiff did
4 not grieve any issues with respect to the process or disability accommodations he was allegedly due.

5 III. <u>Remand to State Court of Plaintiff's Remaining State Claims</u>

6 Although the undersigned makes no particular finding in regard to the merits of the federal claims
7 contained in the complaint, to the extent those claims do have merit, "[t]he decision to retain jurisdiction
8 over state law claims," even when "the federal claims over which" the court "had original jurisdiction are
9 dismissed," is entirely "within the district court's discretion." <u>Brady v. Brown</u>, 51 F.3d 810, 816 (9th Cir.
10 1995); <u>see also</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966) (supplemental
11 jurisdiction is doctrine of discretion, not of plaintiff's right). For supplemental jurisdiction to apply here
12 – and thus for the Court to retain jurisdiction over plaintiff's state claims – in addition to the requirement
13 that there be "a sufficiently substantial federal claim," there also must be "a common nucleus of operative
14 fact between the state and federal claims." <u>Gilder</u>, 936 F.2d at 421.

15 In determining whether to retain jurisdiction over plaintiff's state claims, furthermore, the Court
16 weighs "factors such as economy, convenience, fairness, and comity." <u>Brady</u>, 51 F.3d at 816. Here, while
17 clearly there is a common nucleus of operative facts, the above factors weigh against retaining
18 jurisdiction over the state claims. First, dismissal thereof is not inappropriate at this stage of the
19 proceedings. <u>Gibbs</u>, 383 U.S. at 726 (if federal claims are dismissed before trial, even though they are not
20 insubstantial in jurisdictional sense, state claims should be dismissed as well). Second, those claims now
21 "substantially predominate" – indeed, they now are the only claims remaining – and thus "may be
22 dismissed without prejudice and left for resolution to state tribunals." <u>Id.</u> at 726-27. Finally, because it
23 cannot be said that the state claims here are "so closely tied to questions of federal policy that the
24 argument for exercise" of supplemental jurisdiction "is particularly strong," such jurisdiction should not
25 be exercised in this case. <u>Id.</u> at 727. Remand to state court for resolution thereof is therefore proper.

26 CONCLUSION

27 For the foregoing reasons, the undersigned recommends that the Court grant defendants' motion
28 to dismiss the federal claims contained plaintiff's complaint. (Dkt. #3). As discussed above, plaintiff has

failed to exhaust all available administrative remedies concerning those claims, and thus they should be dismissed without prejudice. In addition, also as discussed above, the remaining state claims contained in the complaint should be remanded to state court.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 10, 2009**, as noted in the caption.

DATED this 16th day of March, 2009.

Karen L. Strombom
United States Magistrate Judge